UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
)
KRAUSZ INDUSTRIES LTD., )
) No. C10-1204RSL
Plaintiff, )
v. )
) ORDER DENYING DEFENDANT'S
ROMAC INDUSTRIES, INC., *et al.*, ) MOTION FOR SUMMARY
) JUDGMENT REGARDING LACK
Defendants. ) OF STANDING
_____)

This matter comes before the Court on defendant "Romac's Motion for Partial Summary Judgment on '556 Claims Based on Lack of Standing" (Dkt. # 97), "Plaintiff's Motion to Renew its Request for Oral Argument . . . and/or Motion to File Brief Sur-Reply" (Dkt. # 125), and Romac's "Motion to Strike and/or Exclude Krausz Declaration Exhibit G" (Dkt. # 137). Defendant argues that plaintiff Krausz Industries Ltd. lacks standing to bring a civil action for infringement of the '556 patent because it did not hold sole legal title to the patent at the time this action commenced. Plaintiff asserts that it obtained legal ownership of the '556 patent through a June 9, 2009, assignment and the operation of Israeli law. Defendant has moved to strike the June 9, 2009, assignment.

Having reviewed the memoranda, declarations, and exhibits submitted by the

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT REGARDING
LACK OF STANDING

parties,[1] the Court finds as follows:

## BACKGROUND

The seal for coupling and connecting means disclosed in the '556 patent was invented by Eliezer Krausz and Avi Chiproot in 1997. At the time, Chiproot was employed by Krausz Metal Industries Ltd., an Israeli company. An application for a United States patent based on the invention was filed on September 17, 1998. The application identified only Eliezer Krausz as the inventor. Eliezer Krausz assigned his rights in the invention to Krausz Metal Industries Ltd. while the application was still pending. The patent was issued to the assignee on September 25, 2001.

In June 2006, the parent company of Krausz Metal Industries Ltd. formed Krausz Industrial Development Ltd. (hereinafter "Development") to hold certain patents. Shortly thereafter, Krausz Metal Industries Ltd. changed its name to Krausz Industries Ltd. (hereinafter "Industries" or plaintiff). The '556 patent was assigned to Development.

In anticipation of this litigation, then-counsel for Industries prepared a "Patent Assignment" to transfer the '556 patent back to Industries. Danny Krausz, president of both Development and Industries, signed the assignment on June 9, 2009, and emailed it back to counsel that day. This action was filed by Industries on June 10, 2009.

At some point in early 2011, Industries realized that Chiproot was a co-inventor of the seal for coupling and connecting means disclosed in the '556 patent. While attempting to correct the error in inventorship in the '556 patent file, plaintiff's counsel discovered that Development was still identified as the owner of the patent. Counsel alerted defense counsel of this fact, but assured him that an assignment had been made transferring the patent back to

---

[1] The Court finds that this matter can be decided on the papers. The parties' requests for oral argument are therefore DENIED.

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT REGARDING
LACK OF STANDING              -2-

Industries before this suit was filed. Attempts to contact the former K&L Gates attorney who had drafted the assignment were unsuccessful, however, and plaintiff's search for the document was unproductive. In the absence of a written assignment, plaintiff proposed an amendment of the complaint to add Development as a plaintiff and/or argued that Development had given Industries an exclusive license to exploit the patented invention. In the meantime, Chiproot assigned all of his rights and interests in the invention to Development.

Defendant Romac Industries, Inc., filed this motion for summary judgment on the ground that Industries lacked standing to pursue an infringement claim because (a) it was not the legal owner of the patent and did not have an exclusive license to exploit the patented invention and (b) Chiproot retained his ownership interest at the time this litigation was initiated and had not joined in the suit. Four days after the motion was filed, plaintiff notified defendant that it had found the missing assignment, along with contemporaneous correspondence documenting the preparation and execution of the assignment prior to the filing of this litigation. In an effort to resolve defendant's concerns regarding Chiproot's patent rights, plaintiff cited Israeli Patents Law § 132 and provided evidence supporting its application in this matter. The parties were unable to resolve this dispute without judicial intervention.

## DISCUSSION

**A. Validity of June 9, 2009, Assignment**

A patent, an application for a patent, or any interest therein "shall be assignable in law by an instrument in writing." 35 U.S.C. § 261. The June 9, 2009, document is in writing and purports to assign all of Development's interest in the '556 patent to Industries. The Court has not found, and defendant has not identified, any other statutory requirements for a valid assignment. Although a careful and prudent assignee would likely notarize the assignment and timely record it in the Patent and Trademark Office in order to protect itself from adverse claims, such notarization and recordation are not preconditions for a valid assignment.

Defendant argues that the assignment was not "real" and should therefore be disregarded. Defendant is not, however, arguing that plaintiff manufactured the assignment in response to the summary judgment motion or otherwise contesting the timing or content of the assignment. Rather, defendant argues that the document had no value or meaning because it was prepared by litigation counsel and was not logged or reported in the corporate records of Development or Industries. Neither of these facts destroys the legal import of the June 9, 2009, assignment.

Finally, defendant argues that the June 9, 2009, assignment should be disregarded because it was not produced in a timely manner and it contradicts the sworn deposition testimony of Danny Krausz. Discovery in this matter is on-going, and defendant has not identified any discovery request to which the June 9, 2009, document was responsive. Whether plaintiff should have found and produced the document earlier than April 25, 2011, cannot be ascertained from the current record. Nor is there any indication that plaintiff attempted to deceive or ambush defendant. The record reflects that plaintiff, its counsel, or both had a vague recollection that an assignment had been made prior to initiation of this lawsuit and conveyed that information to defendant. Their subsequent inability to find the actual document threw that recollection into doubt. When Danny Krausz was asked at deposition about the assignment, all he could say was that he did not remember, but was sure that Industries had the right to exploit the invention disclosed in the '556 invention. The subsequent production of the written assignment does not contradict these statements, nor is this a situation in which a deponent attempts to undo his damaging deposition testimony by providing a contradictory affidavit. Danny Krausz expressed lack of knowledge, and the documentary evidence has provided clarification. Exclusion in these circumstances would be inappropriate.

**B. Ownership Interest of Avi Chiproot**

"Absent the voluntary joinder of all co-owners of a patent, a co-owner acting alone

will lack standing" to sue for patent infringement. Israel Vio-Eng'g Project v. Amgen, Inc., 475 F.3d 1256, 1264-65 (Fed. Cir. 2007). Defendant argues that Chiproot was an owner of the '556 patent at the time this lawsuit was filed and that his lack of participation justifies dismissal. Plaintiff, however, cites Israeli Patents Law § 132 for the proposition that Chiproot's interest in the invention automatically passed to his employer, Krausz Metal Industries Ltd., in 1997. Section 132(a) states:

> An invention by an employee, arrived at in consequence of his service and during the period of his service (hereafter: service invention) shall, in the absence of an agreement to the contrary between him and his employer, become the employer's property, unless the employer relinquishes the invention within six months after the day on which notification under section 131 was delivered to him.

Defendant, apparently conceding that Chiproot was an employee of Krausz Metal Industries at the time he and Eliezer Krausz arrived at the invention, that the invention grew out of his employment, and that there was no contrary agreement between parties, argues that a foreign statute which deprives an inventor of ownership over his invention cannot or should not be applied under U.S. law.

The general rule under U.S. patent law is that "rights to an invention belong to the inventor." Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., __ U.S. __, 131 S. Ct. 2188, 2195 (2011). The inventor may, however, voluntarily divest himself of some or all of those rights by assignment. 35 U.S.C. § 261. Assignments are often used to transfer rights in an existing invention, but they may also be written in such a way that they automatically transfer ownership of future inventions from an employee to an employer, just as § 132 does. See DDB Techs. LLC v. MLB Advanced Media LP, 517 F.3d 1284, 1290 (Fed. Cir. 2008); Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1253 (Fed. Cir. 2000). In addition, Congress has seen fit to divest inventors of their rights in future inventions through specific, non-negotiated, statutory provisions. See 42 U.S.C. § 2182; 42 U.S.C. § 5908(a); 51 U.S.C.

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT REGARDING
LACK OF STANDING                    -5-

§ 20135(b)(1). Federal courts have been willing to apply both domestic and foreign statutes transferring ownership of an invention from the inventor to his employer or funding agency. See U.S. Dep't of Energy v. Szulinski, 673 F.2d 385 (C.C.P.A. 1982) (directing Patent and Trademark Office to issue the patent on Szulinski's application to the Department of Energy pursuant to 42 U.S.C. § 2182); Aerotel, Ltd. v. Radiant Telecom Inc., 569 F. Supp.2d 387 (S.D.N.Y. 2008) (applying Israeli Patents Law § 132(a) in order to determine ownership and standing in patent litigation). Thus, pursuant to § 132 of the Israeli Patent Laws, Chiproot's ownership interests in the invention automatically transferred to his employer, plaintiff's predecessor, at the time he arrived at the invention.[2]

Contrary to defendant's argument, plaintiff need not show that Israel intended § 132 to have extraterritorial effect. Plaintiff has provided evidence of the relevant foreign law, its interpretation, and its application. Whether this Court should apply the law of the United States or the law of some other jurisdiction to a particular issue raised during federal litigation is determined by reference to federalism, comity, and choice of law principles, regardless of Israel's intent. Nor is there any indication that federal courts have imposed a uniform patent ownership scheme as urged by defendant. In fact, courts typically turn to state law to determine who owns the patent rights and on what terms, despite the obvious lack of uniformity that will result from such an analysis. Larson v. Correct Craft, Inc., 569 F.3d 1319, 1327 (Fed. Cir. 2009); Jim Arnold Corp. v. Hydrotech Sys., Inc., 109 F.3d 1567, 1572 (Fed. Cir. 1997). Because states have the authority to govern the ownership of inventions and patents along with other types of property, federal courts look to the law of the underlying jurisdiction when determining ownership. The Court will not diverge from these existing precedents based on

---

[2] Chiproot's subsequent statements regarding what he believed to be his ownership interest in the '556 patent and his 2011 attempt to transfer that interest to Development reflect a lack of understanding regarding the applicable law, but do not change the ownership analysis.

nothing more than a vague constitutional argument asserted in defendant's reply memorandum.

For all of the foregoing reasons, defendant's motion for summary judgment based on lack of standing (Dkt. # 97) is DENIED. Plaintiff's motion for leave to file a sur-reply (Dkt. # 125) is also DENIED. Because all of the arguments asserted in Romac's motion to exclude the June 9, 2009, assignment (Dkt. # 137) were raised in its reply memorandum, its implicit claim that "newly discovered evidence" justifies a separate, untimely, and unauthorized motion to strike is not persuasive. That motion is therefore STRICKEN.

Dated this 15th day of August, 2011.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge